[Civ. No. 2898.  First Appellate District, Division Two.—December 31, 1919.]

## OTTO SCHERER, Respondent, v. W. C. EIDENMULLER, Jr., Appellant.

[1] PHYSICIAN AND SURGEON—ACTION FOR DAMAGES FOR MALPRACTICE—FAILURE TO TAKE X-RAY—EVIDENCE.—What is or is not proper practice in examination and treatment by a physician and surgeon, or the usual practice and treatment, is a question for experts and can be established only by their testimony; and in this action to recover damages for alleged improper surgical and medical treatment administered to the plaintiff, following a gunshot wound in the elbow, based upon the failure of the defendant, a practicing physician, to take second X-ray of the injured member until more than three months after plaintiff's arm was operated upon and placed in a cast, it being contended that if such X-ray had been taken, it would have disclosed the necessity for a second operation, the performance of which at an earlier date would have prevented plaintiff's elbow from remaining stiffened, the evidence introduced failed to establish negligence in the treatment received by the plaintiff.

[2] ID.—ADMISSION THAT OTHER DOCTOR MORE SKILLED—EVIDENCE.—The fact that the defendant, after taking such second X-ray and concluding that a second operation was necessary, stated to the plaintiff that he would take him to another doctor because the latter had had more experience with such cases and had just returned from the war zone, and that he, defendant, had not had a case like plaintiff's before, did not amount to an admission of incompetency and unskilfulness upon the part of the defendant.

[3] ID.—FAILURE TO MAKE COMPLETE RECOVERY—PRESUMPTION.—The fact that a patient does not make a complete recovery raises no presumption of the absence of proper skill and attention upon the part of the attending physician.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Care and skill required of physicians and surgeons, notes, 59 Am. Dec. 397; 59 Am. Rep. 392; 1 Ann. Cas. 21.

Goodfellow, Eells, Moore & Orrick, Stanley Moore and R. W. Palmer for Appellant.

James A. Devoto, Devoto, Richardson & Devoto and Karl Kennedy for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of two thousand dollars against him in an action brought by the plaintiff to recover damages for alleged improper surgical and medical treatment administered to the plaintiff by the defendant, a practicing physician of San Francisco. The facts are, stated briefly, that on the twenty-fourth day of April, 1916, plaintiff received a gunshot wound in the right elbow, the bullet passing through the joint and shattering the bones. He was treated at the emergency hospital, where the wound was bandaged, and he returned to his home. During the evening of the same day the pain became very severe and he called the defendant, a physician, who administered a hypodermic to ease the pain. The next morning the defendant directed the plaintiff to go to a hospital for treatment, and while plaintiff was at the hospital defendant examined the wound, had X-ray pictures taken and bandaged the arm again. The arm was badly swollen and inflamed and it was decided that an operation was not advisable until this condition was relieved. On the eleventh day of May, the swelling and inflammation having subsided some, an operation was performed by the defendant, assisted by Dr. Remmell, and the arm was placed in a plaster cast, through which an opening was made to allow access to the wound for cleansing and treatment. Later this cast was removed and the arm placed in splints. After the operation the plaintiff called regularly at the office of the defendant and was treated by him. The arm showed signs of infection and discharged pus from the date of the operation until August 21st. At this date, the wound having failed to heal, X-ray pictures were again taken, and the defendant advised the plaintiff that it would be necessary for him to undergo another operation. At this time the defendant stated to the plaintiff that he would take him to another physician, Dr. Stoddard, who had just returned from the war zone and who had had considerable experience with injuries of this character. Plain-

tiff and defendant together consulted Dr. Stoddard, who also advised another operation. Plaintiff thereupon discontinued his visits to the defendant's office and consulted physicians selected by him, who performed a second operation. After the second operation the wound healed rapidly, but the elbow remained stiffened.

[1] The appellant attacks the verdict as unsustained by the evidence, and this argument raises several questions of law. The first of these is a construction of the evidence under the rule laid down in the case of *Houghton* v. *Dickson,* 29 Cal. App. 321, [155 Pac. 128], to the effect that what is or is not proper practice in examination and treatment by a physician and surgeon, or the usual practice and treatment, is a question for experts and can be established only by their testimony. This same rule has been reiterated in the case of *Dameron* v. *Ansbro,* 39 Cal. App. 289, [178 Pac. 874, 879], and in other cases cited therein. It is the contention of the plaintiff that the defendant was negligent in not taking X-ray pictures after the operation and before August 21st, for it is contended that if such pictures had been taken they would have shown a condition calling for a second operation, and it is argued inferentially, though without any evidence in the record in support thereof, that a second operation at an earlier date would have prevented plaintiff's arm from becoming stiff. The only expert testimony offered by the plaintiff for the purpose of establishing the negligence of the defendant was that of Dr. Coffey. In reply to repeated questions directed to the same matter, Dr. Coffey maintained that whether or not he, as a physician, would take X-ray pictures shortly after performing an operation such as was performed in the present case would depend upon whether or not he was certain or uncertain of his mechanical fixation in the operation. Dr. Coffey also stated that the length of time that would be required to form a union of the bones, where the person was in good health, might be six months or a year or longer. The following questions and answers also appear in the direct examination of Dr. Coffey: "Q. Supposing there was infection which lasted from the time of the operation on May 11th until August 21st, almost continuously. Can you state, with that situation existing, whether or not you would, before August 21st, have operated anew upon

the arm after taking X-ray photographs? A. No, I wouldn't; that wouldn't govern me; what would govern me would be the infection if it cleared up and I could go into that field, that would govern me entirely,—not the X-ray; the infection would determine the going in there and disturbing this wiring or doing any further work, because I would be opening up a new field of infection. Q. What would you say, Doctor, in the event there was a constant condition of suppuration during all that period of time? A. I would treat the suppuration and forget all about the fracture. Q. What method would you use in the treatment of the infection? A. Well, one of the antiseptics —wash it out, clean it; if it was confined to that locality, I would simply resort to local dressings. I would inject an antiseptic fluid and get proper drainage. I would wash it. Q. During the treatment for the suppuration would it be necessary to or usual to take any X-ray photographs to ascertain the condition not only of the bones but of the tissues? A. Well, if I had suppuration, the X-ray would serve no purpose because I would be governed entirely,— the mechanical work upon that arm would be governed entirely by the presence of the infection. I wouldn't attempt to go in there while there was infection . . ." There is other testimony of this witness of a like character. It clearly appears from his entire testimony that whether or not it would be desirable to take X-ray pictures at frequent intervals after an operation such as this would depend upon the individual case and the personal knowledge of the internal situation possessed by the man who had performed the operation; that, regardless of whether or not X-ray pictures had been taken at frequent intervals, it would have been unwise, according to the opinion of Dr. Coffey, to have operated during the time that the wound showed signs of infection; that in cases of this character it might be necessary to operate half a dozen times on a bone before getting a union. It is admitted that the wound was suppurating during the entire time it was being treated by the defendant, and it is also admitted that the treatment given it during such period was the treatment which Dr. Coffey testified he would himself have given in a similar case. Dr. Coffey testified that he had had twenty-seven years' experience as a physician and surgeon and had handled over eighteen

thousand fracture cases; that the injury to the plaintiff was a very serious injury; that it was such an injury as was likely to result in a stiff elbow; that it was an unusual injury; that not many doctors in this locality have had cases of precisely this kind, and that he himself had never had a case like it.

We have discussed this testimony at length because upon it plaintiff must rest to establish negligence in the treatment received by him. We think it falls far short of the proof required.

[2] The respondent argues that because the defendant stated to the plaintiff about August 20th that he would take him to Dr. Stoddard for the second operation, because Dr. Stoddard had had more experience with such cases and had just returned from the war zone, and that he, defendant, had not had a case like this one before, this amounts to an admission of incompetency and unskilfulness upon the part of the defendant. We think these statements are susceptible of no such construction. As pointed out before, Dr. Coffey testified that in an experience covering eighteen thousand fracture cases he had never seen a case like this one. The defendant testified that he had had considerable experience in fracture cases, but had never had one precisely like this. The fact that Dr. Stoddard was admitted to be more experienced and skilled along this particular line does not imply that the defendant did not possess that reasonable degree of learning and skill possessed by others of his profession in his locality. This question is discussed in the case of *Houghton* v. *Dickson, supra,* where it is said that the fact that some other physician may have discovered a dislocation in an arm does not show a want of ordinary care in the defendant physician, since the physician who made the discovery may have been a man who, by reason of superior learning and advantages, possessed far more than ordinary skill in his profession. The court in that case quotes from the case of *James* v. *Crockett,* 34 N. B. 540, as follows: "A surgeon does not undertake to perform a cure, nor does he undertake to use the highest possible degree of skill, as there may be persons of higher education and greater advantages than himself . . ." Surely it will not be contended that the measure of ordinary skill is the amount of skill and experience acquired by physicians who

have been working for some time in the war zone and handling a constant succession of difficult and unusual cases.

[3] Though the determination of the questions herein discussed cuts the foundation from under the judgment in this case, it is pertinent to remark also that the record contains no evidence that it would have been possible or likely by any course of treatment, no matter how skillful, to have restored to the plaintiff the full use of his arm after an injury such as occurred here. The fact that a patient does not make a complete recovery raises no presumption of the absence of proper skill and attention upon the part of the attending physician. (*Haire* v. *Reese,* 7 Phila. (Pa.) 138, quoted in *Houghton* v. *Dickson, supra.*)

It becomes unnecessary to discuss the other points urged by the appellant.

The judgment is reversed.

Brittain, J., and Nourse, J., concurred.