## CARSON v. JACKSON.

(Court of Appeals of District of Columbia. Submitted April 6, 1922. Decided June 5, 1922.)

No. 3736.

1. Limitation of actions ⬷⬳72(7)—Exception in favor of minor permits delayed action during minority.

Code, § 1265, requiring actions for negligence to be brought within three years, but providing that a person under age when the rights of action shall accrue, or his proper representative, can bring such action within time limited after the removal of such disability, does not limit an action for negligence by a minor either to a period of three years after the cause accrues or to the period of three years after the minor attains majority, but permits an action by the minor after the expiration of the first three-year period and while she is still a minor.

2. Evidence ⬷⬳555—Testimony of laymen as to treatment by surgeon held sufficient basis for hypothetical questions asked experts.

Where the testimony given by laymen as to treatment of a child's arm by defendant physician was sufficiently definite for experts to base thereon their opinion as to whether the treatment conformed to the required standards, it was not error to permit hypothetical questions to be asked experts based on such testimony.

3. Appeal and error ⬷⬳231(6)—Objection that question asked experts did not correctly hypothesize testimony is too general.

An objection that a long hypothetical question asked expert witnesses did not correctly hypothesize the testimony is too general to raise any question for consideration on appeal, but counsel should have pointed out specifically the testimony which is improperly omitted or included.

4. Appeal and error ⬷⬳1170(7)—Leading questions asked experts held not prejudicial.

Even if the hypothetical question asked expert witnesses was leading in form, the asking of such question did not prejudice the adverse party, since the expert well knew before the question was asked what answer was expected of him, and he was not therefore influenced by its form, so that the objection to such question should be disregarded, under Judicial Code, § 267, as amended by 40 Stat. 1181, requiring disregard of technical errors.

5. Evidence ⬷⬳506—Expert can be asked whether treatment by physician conformed to standard.

In an action for malpractice by a surgeon, expert witnesses can be asked whether the defendant had given the plaintiff the care and attention which a surgeon of ordinary skill and ability practicing in the locality would have given under the circumstances, though that was the question to be established before the jury, since the jury could not determine for themselves whether the treatment was negligent or not, as they could do in an ordinary case of negligence, where the test is how a reasonable man would have acted under the circumstances.

6. Appeal and error ⬷⬳181, 248—Statute does not dispense with necessity of making objections or exceptions.

Judicial Code, § 269, requiring technical errors, defects, or objections, which do not affect the substantial rights of the parties, to be disregarded, does not dispense with the requirement that a party shall make objections and exceptions in the court below, in order to rely upon the alleged errors on appeal.

7. Trial ⬷⬳62(2)—Testimony of experts that physician could not have given treatment he said he did is proper rebuttal.

In an action against a surgeon for malpractice, where defendant testified that at the second operation he opened the bone in plaintiff's arm, it

⬷⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was proper rebuttal for experts to testify on behalf of the plaintiff that it was impossible for him to have opened the bone, since, if he had done so, the injury would not have resulted.

**8. Appeal and error.⚖=>1047(4)—Repetition of testimony in chief in connection with proper rebuttal held not prejudicial.**

Where testimony by plaintiff's father as to statements made by defendant with relation to opening the bone in plaintiff's arm was proper rebuttal of defendant's testimony he did open the bone, the fact that the father was permitted to give some testimony which was not strictly rebuttal, but merely a repetition of his testimony in chief, was not prejudicial to defendant.

**9. Physicians and surgeons ⚖=>18(10)—Instruction as to duty held proper.**

In an action against a surgeon for malpractice, an instruction that the negligence charged against defendant must be a violation of a duty owed by defendant to the plaintiff, and might consist of an act of commission or omission, and describing the duty in harmony with previous decisions, was not erroneous.

**10. Physicians and surgeons ⚖=>18(10)—Prayer physician was not liable for mere error of judgment was erroneous.**

In an action against a surgeon for malpractice, a prayer of defendant, stating he could not be held liable for mere error of judgment, was erroneous, as requiring only the exercise of his best judgment, no matter how poorly informed, and not requiring him to employ such reasonable care and skill as are usually possessed by surgeons in the community.

**11. Trial ⚖=>260(1)—Prayer for instruction already covered need not be given.**

A prayer on a subject which was fully and correctly covered by the court in its general charge could be refused without error.

**12. Physicians and surgeons ⚖=>18(10)—Prayer directing verdict for physician, if condition was not result of treatment, was erroneous.**

In an action against a surgeon for malpractice, a prayer instructing the jury there could be no recovery, if the condition of plaintiff was not the result of defendant's treatment, was erroneous, as relieving defendant from liability for failure to give such treatment as ordinary skill required.

Appeal from the Supreme Court of the District of Columbia.

Action by Mary H. Jackson, a minor, by Sidney M. Jackson, her next friend, against Simeon L. Carson, to recover damages for malpractice. Judgment for plaintiff, and defendant appeals. Affirmed.

Henry E. Davis and W. L. Houston, both of Washington, D. C., for appellant.

George W. Offutt and C. V. Imlay, both of Washington, D. C., for appellee.

SMYTH, Chief Justice. The appellee, by her next friend, sued the appellant for damages sustained by her through his alleged negligence. The declaration is in four counts, differing from one another in nothing that is material on this appeal. She states that she was suffering from a disease of the bone of the left arm, known as osteomyelitis of the radius, and she applied to the defendant, who is a physician and surgeon, for medical treatment; that he undertook to treat her in consideration of the promise of a reward to be paid by her father; that, through negligence, he at first failed to discover the presence of the disease, or the extent thereof, and treated her arm as if it were not afflicted with the disease named; that afterwards he discovered the

---

⚖=>For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

disease, and negligently and unskillfully treated the same, with the result that it was not arrested, but, on the contrary, was permitted to continue its attack upon the arm, thereby producing great pain and causing the arm to become deformed. The defendant filed two pleas—one of not guilty, and one that the cause of action was barred by the statute of limitations. Plaintiff by an amended replication set up her infancy, to which defendant demurred. The demurrer was overruled, and he joined issue on the replication. There was a verdict and judgment for the plaintiff.

Appellant groups the points to be argued under four captions:

[1] 1. The negligence charged occurred, if at all, he says, in June, 1915, and, as the declaration was not filed until July 20, 1918, more than 3 years afterwards, the action was barred by the statute of limitations. Section 1265 of the Code ordains that an action for negligence must be brought within 3 years from the time when the right to maintain it accrued, but provides:

"That if any person ❋ * ❋ shall be at the time of the accruing of such right of action under twenty-one years of age, ❋ * ❋ such person or his proper representative shall be at liberty to bring such action within the respective times in this section limited after the removal of such disability."

The limit, as we have seen, with respect to this action, is 3 years. The statute, therefore, gives a minor 3 years after arriving at his majority to institute the action. Appellant does not deny this, but says that, if the minor brings the action during his minority, he must do so within 3 years from its accrual. If this be correct, we would have the anomalous situation of a minor being barred after 3 years from bringing action during his minority, but free to bring it at any time during a period of 3 years after he had reached 21 years of age. This is not the correct meaning of the statute. The minor, in our judgment, has the entire period of his minority and 3 years thereafter within which to institute the action.

A contention similar to the one now made by appellant was advanced many years ago in Chandler v. Villett, 2 Saund. 117, 120, and rejected as untenable. In accord with the decision in that case are Buswell, Limitations and Adverse Possession, § 107; Angell, Limitations (5th Ed.) 196; Hopkins v. Virgin, 11 Bush (74 Ky.) 677, and Whirley v. Whiteman, 1 Head (38 Tenn.) 609, 616. Appellant produced no authority in support of his position, and we are not aware of any.

[2] 2. Surgeons were asked a hypothetical question, based on the testimony of laymen relative to the condition of the child's arm and the treatment given by the defendant, which concluded with these words,

"In your opinion, would you say that the doctor had given the case the care and attention which a physician and surgeon of ordinary skill and ability practicing in the District of Columbia would have given under all the circumstances as related?"

Objection was made to it on the ground that it was put at an inapt time, that no medical witness had testified to what was done, that the treatment as given to the arm by the defendant was described to the

jury by laymen, knowing nothing about surgery, anatomy, or medicine, that a hypothetical question to a scientific witness based on such testimony was simply valueless, and that the question does not correctly hypothesize the testimony introduced in the case, and, besides, is leading.

The ground on which it is claimed the question was not asked at a proper time is not disclosed, and therefore we put aside that part of the objection as of no moment. We see no reason why the testimony of laymen concerning the treatment given by defendant to the child's arm was not a sufficient basis for the hypothetical question. The laymen who testified were found competent by the court, we must assume, to give the testimony in question, else it would not be in the record, and appellant does not say it was improperly admitted. The surgeons, men eminent in their profession in the District, regarded it as sufficient to enable them to express an opinion concerning the treatment given by the defendant. Of course, testimony of laymen or experts might fall so far short of describing a situation that the court would be obliged to exclude a hypothetical question based upon it. But our examination of the record shows that this was not the case here. It was open to the defendant to show that the testimony did not correctly describe the treatment or condition of the child, and, if he had satisfied the jury that it did not, the answer of the surgeons, bottomed on it, would necessarily have failed of effect.

[3] The objection that the question did not correctly hypothesize the testimony is too general to raise any question for our consideration. Counsel should have pointed out specifically the testimony which was improperly omitted or included, so as to bring sharply to the attention of the trial court the defect complained of. Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 39 Sup. Ct. 102, 63 L. Ed. 275; Beaver v. Taylor, 93 U. S. 46, 23 L. Ed. 797; Robinson & Co. v. Belt, 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65; McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162; Washington & O. D. Ry. v. Slyder, 43 App. D. C. 95. If the defect was a serious one, the court would undoubtedly have required the plaintiff to amend it, or refused to permit it to be answered, because that would have been its duty, and we must assume it would have done what the law requires. Shreveport v. Cole, 129 U. S. 36, 42, 9 Sup. Ct. 210, 32 L. Ed. 589. Thus error would have been avoided, and an appeal to this court on that point rendered unnecessary. Hypothetical questions "are usually based upon a large number of facts, and it is hardly fair to make an objection in a general way, without pointing out the particular part objected to." State v. Ginger, 80 Iowa, 574, 577, 46 N. W. 657.

[4] With respect to whether the question was leading, perhaps it would have been better if the expert had been asked whether in his opinion the treatment was in accordance with the standards mentioned in the lines quoted above. However, the question propounded could not have prejudiced the defendant. We assume that the expert well knew, before the question was asked, what answer was expected of him, and he was not, therefore, influenced by the form of the interrogatory. Where the court is satisfied that wrong was not done, even

though a technical rule of procedure was ignored, it is its duty to overrule the objection. Judicial Code, § 269, as amended by 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246).

[5] As a further objection to the question, it is asserted that, while the witness might have been asked whether the treatment indicated was proper or improper, skillful or unskillful, it was error to ask him whether or not the defendant had been guilty of negligence or malpractice. To permit such a question, says the appellant, was equivalent to allowing the witness to express himself on the question to be answered by the jury. We might dispose of this objection by saying that it was not raised in the lower court, and therefore is not a subject for our review. Pennsylvania R. R. Co. v. Minds, 250 U. S. 368, 375, 39 Sup. Ct. 531, 63 L. Ed. 1039; Budd v. United States, 48 App. D. C. 332; Allis v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91; Columbia Aid Ass'n v. Sprague, 271 Fed. 381, 50 App. D. C. 307. By the question the witness was not asked to say whether or not the defendant had been guilty of negligence or malpractice, although probably that was the effect of the question. In order that the plaintiff might make out her case, it was necessary for her to show to the satisfaction of the jury that the defendant had not given her the care and attention which a physician and surgeon of ordinary skill and ability practicing in the District would have given under the circumstances related. This is not denied. She could not prove it, except by surgeons who knew what care and attention such surgeons would have given. Laymen would have been incompetent to testify upon the subject. The jurors knew nothing about it. It was quite different from an ordinary case of negligence, where the jury is able to solve the question by applying thereto their own experiences. In such a case the test is: How would a reasonably prudent man have acted under the circumstances? Texas & Pacific Ry. v. Barrett, 166 U. S. 617, 619, 17 Sup. Ct. 707, 41 L. Ed. 1136. There is no room for expert testimony in a case like that. But here it was necessary that the experts should tell the jury the essential thing, namely, whether or not the defendant's treatment of the plaintiff satisfied the standards of care observed by surgeons of ordinary skill in the District. If they simply answered, as suggested by appellant, that the treatment was improper or unskillful, they would not have gone far enough. The jury would still be in the dark as to whether or not the treatment was in accordance with the standards just mentioned. Light upon the subject could be given only by an answer to a question such as the one propounded.

A like question was put to physicians in Allen v. Voje, 114 Wis. 1, 89 N. W. 924. They were asked whether or not the treatment given the patient was proper and sanctioned by physicians and surgeons possessing and exercising ordinary skill and intelligence in the vicinity of Oconomowoc, and it was held the question was proper. Another case says:

"The question of negligence and carelessness on the part of the surgeon in the treatment he gave the plaintiff's leg, while it is one which the jury must necessarily determine upon the whole evidence in the case, is still a question which must be determined mainly upon expert evidence," and in such a case

it is admissible for the person on whom the burden is to show, if he can, "by witnesses having superior knowledge and skill in surgery, that the treatment he gave the plaintiff's leg was such as a surgeon of ordinary knowledge and skill in his profession would and ought to have given." Quinn v. Higgins, 63 Wis. 664, 666, 24 N. W. 482, 53 Am. Rep. 305.

See, also, 5 Enc. Ev. p. 582 (b).

The defendant testified in his own behalf as to his treatment of the plaintiff. In rebuttal surgeons were asked a series of short hypothetical questions based on testimony given by the defense. We think this was proper. Counsel do not seriously contend that it was not, but they argue that the questions assumed facts not in accord with the evidence. These facts were not pointed out at the trial, and, for the reasons already given, the rulings of the court on the objections to the questions are not properly before us.

[6] Counsel frankly concede that the court below was not advised of the grounds of the objections, but argue it was not necessary, in view of section 269 of the Judicial Code, supra, and offer August v. United States, 257 Fed. 388, 168 C. C. A. 428, as their authority for saying so. That was a criminal case, where the rule with respect to the necessity for objections and exceptions was relaxed. In a later case the same court was called upon to decide whether it would in a criminal case consider a point not raised by the defendant in the trial court. The United States attorney argued that the court should not do so. After admitting the undoubted existence of the rule contended for by him, the court said there was an exception to it where the life or liberty of a citizen was at stake. In such a case the court "may notice and relieve from radical errors in the trial which appear to have been seriously prejudicial to the rights of the defendant." But, while citing the August Case, the decision is rested, not on the section in question, but on the common law. This connotes a limitation, if not an overruling, of the earlier decision. McNutt v. United States (C. C. A.) 267 Fed. 670, 672. See, also, Skuy v. United States (C. C. A.) 261 Fed. 316, 320, a decision by the same court, where the August Case is cited albeit no reference is made to the section.

While respecting very highly the ability of the court which decided the August Case, we are not convinced that the Code section we are reviewing was intended to completely overturn the necessity for specific objections and exceptions in the trial court. It does not say so. On the contrary, its plain meaning, as we conceive it, is that technical errors, defects, or exceptions, which do not affect the substantial rights of the parties, should be disregarded. If the section meant what counsel contend for, it would have said that, notwithstanding there were no objections or exceptions, the reviewing court should examine the entire record and give judgment according to the right. The purpose of the section is to minimize the value of technical errors and objections, unless they affect the substantial rights of the litigants, and not to do away with the necessity of proper objections and exceptions. This interpretation finds support in the report of the House Committee on the Judiciary, when submitting the bill for consideration of the House. It said:

"Its object is to limit the power given in this section by directing that technical errors that may occur in the trial of an action shall be disregarded, unless it is made to appear that such errors affect the substantial rights of the parties. Under the practice that prevails in many jurisdictions, every error is presumed to affect the substantial rights of the parties litigant, unless the contrary clearly appears, and such errors are grounds for a new trial. The object of the proposed legislation is to cast upon the party seeking a new trial the burden of showing that any technical errors that he may complain of have affected his substantial rights; otherwise, they are to be disregarded." House Report No. 913, 65th Cong. 3d Sess.

The view suggested by appellant, if adopted, would put a premium on laxity and negligence in the trial of cases, and would greatly add unnecessarily to the burden of appellate courts. Moreover, we are satisfied from an inspection of the record that the questions were proper, and that no error was committed in allowing them.

[7] Defendant testified that he had opened the bone during the second operation. This was important, if true. In rebuttal, two surgeons were asked hypothetical questions, predicated on defendant's testimony, for the purpose of showing that it was not true; for, if the bone had been opened, as the defendant testified, the injury complained of would not have resulted. We think the questions propounded to the surgeons were proper in rebuttal.

[8] 3. An attack is made upon testimony given in rebuttal by the father of the plaintiff. It related to what defendant said concerning the opening of the bone, and had for its purpose the refutation of his testimony. While it is true the father, during the plaintiff's case in chief, went into the matter of the treatment of the arm by defendant, the latter's claim that he had opened the bone was new, and a proper subject for rebuttal. It may be that some of the father's testimony was not strictly rebuttal, but merely a repetition of what he had said before. None the less we are satisfied no possible prejudice could have resulted therefrom to the defendant.

[9] 4. Complaint is made because the court gave instruction No. 2 on the prayer of plaintiff. It is said to be a mere abstraction, without any possible application to the case. The criticism is general. If the instruction was wrong in any particular, counsel have failed to point it out. We have studied it carefully, and are convinced that it contains a correct and lucid exposition of the applicable law. After saying that the negligence charged must be a violation of a duty owed by the defendant to the plaintiff, and might consist of an act of commission or omission, it describes the duty in harmony with what has been said on the subject by this court in Sweeney v. Erving, 35 App. D. C. 57, and 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905, and Levy v. Vaughan, 42 App. D. C. 146, 153.

[10, 11] Nor do we find any error in the refusal of the court to give defendant's prayers numbered 1, 4, and 6. The part of the prayer numbered 1 which counsel emphasize says that the defendant could not be held "for a mere error of judgment, provided that he did what he thought best after duly careful examination." Under this he would not be responsible, even though he failed to employ such reasonable care and skill as are usually possessed by surgeons in this community.

281 F.—27

All it requires is the exercise of his best judgment, no matter how poorly informed. This is not the law, and the prayer was properly rejected. True, there are other parts of the prayer which indirectly mention the correct standard of duty; but, if the prayer had been given, the jury would have no means of determining which part to follow. Apart from this, the subject was fully and correctly covered by the court in its general charge; therefore there could be no error. Redman v. Smith, 50 W. L. R. 7; Wardman v. Hanlon, —— App. D. C. ——, 280 Fed. 988, and cases cited.

[12] With respect to the fourth prayer, it says that, if the condition of the plaintiff's arm "was not the result of any treatment of the plaintiff by the defendant," the jury should find for the defendant. Manifestly this is not correct. Defendant was liable, not only for any improper treatment given by him, but also for negligent failure to treat. It is not error to refuse a prayer which is not correct in all its parts. Jackson v. United States, 48 App. D. C. 273.

Finally it is suggested that a prayer for an instruction directing the jury to return a verdict for the defendant should have been given. Defendant requested five instructions, each of which contemplated a submission of the case to the jury on the assumption that there was in it a question of fact for their consideration. One was given, and the rest refused. Then he asked that the case be taken from the jury, on the theory that there was no question of fact for their determination. This is somewhat inconsistent. But, however that may be, we are of opinion that it was a clear case for the jury. There was quite enough of evidence to support a verdict for either side. It was for the jury to determine which side should prevail.

The case was carefully and thoroughly tried. No substantial errors were committed by the court. The jury found against the defendant, and we have no right to disturb the finding. Hence the judgment is affirmed, with costs.

Affirmed.