[No. 18215. Department One. December 31, 1923.]

F. H. MILES, *Appellant*, v. C. J. HOFFMAN, *Respondent*.[1]

PHYSICIANS AND SURGEONS (9, 10)—MALPRACTICE—NEGLIGENCE—METHOD OF TREATMENT. A physician cannot be held liable for malpractice in the beginning of his treatment where there was reputable medical authority shown by expert testimony for the treatment given.

SAME (9, 10). Whether a physician was negligent in his treatment is a question for the jury, where there was evidence of lack of attention in the infrequency of his visits, and failure to give careful instructions and warning to inexperienced nurses, and failure to take temperature and to detect the presence of infection.

APPEAL (406)—REVIEW—NEW TRIAL—DISCRETION. The granting of a new trial for insufficiency of the evidence in a malpractice case will not be set aside, where the trial court could not tell what part of the award was based upon negligence in treatment, as to which there was no evidence that it contributed to or caused the final condition.

Appeal from an order of the superior court for Cowlitz county, Kirby, J., entered March 15, 1923, granting a new trial, after the verdict of a jury rendered in favor of the plaintiff, in an action for malpractice. Affirmed.

*J. E. Stone* and *Miller, Wilkinson & Miller*, for appellant.

*Bates & Peterson*, for respondent.

TOLMAN, J.—This is a malpractice case. The jury found a verdict in favor of the plaintiff. The trial court granted defendant's motion for a new trial, and the plaintiff has appealed from that order.

In his memorandum opinion granting the motion for a new trial, the court said:

[1]Reported in 221 Pac. 316.

"For the purpose of disposing of this motion there are three phases which this case may be logically divided into, and they are,

"1st.   The treatment awarded plaintiff by defendant when defendant was first called to take charge of the case.

"2nd.   The care and treatment awarded plaintiff up until he was taken to the hospital.

"3rd.   The treatment which plaintiff received while at the hospital.

"In so far as the treatment first administered to plaintiff is concerned, I am unable to see wherein defendant could have been charged with negligence or with failure to use ordinary care.   Defendant knew the source of the injury—that it had been inflicted by a mad boar.   The extent of the penetration he nor no one else knew.   He swabbed the wound with a cauterizing fluid, applied a wet pack to it and, as I recall, placed the knee in an improvised box splint.   All of the medical men, except one, who were witnesses testified that this was proper treatment of plaintiff's wound.   Dr. Arnold, however, testified that this treatment was not proper or skilfull, but in fact was contrary to the dictates of ordinary horse sense.   He testified that the wound should have been opened at once so that the infection, if any, which had been carried into it by the tusk of the boar could have been destroyed and the wound provided with proper drainage.   On this point he was contradicted by the other experts, who claimed that it would have been dangerous to have opened the wound as suggested by Dr. Arnold, for the reason that there was danger of spreading the infection which might have been carried into the wound by the boar's tusk, and also of cutting the sack containing the knee joint fluid.

"Irrespective of the merits of the claims of Dr. Arnold as to what was the proper treatment, and the contrary claims of the doctors testifying for defendant, it is apparent that what was proper treatment under the circumstances is a question to be determined by medical testimony.   The treatment actually awarded plaintiff was, according to the great preponderance of

the evidence, the treatment ordinarily awarded cases of this kind in this and similar localities. I understand the rule to be that where a physician awards the treatment ordinarily given he cannot be held for malpractice because of bad results. Also that if there are two or more methods of treating an injury, each having the sanction of the medical profession, the choice of one method to the exclusion of the others will not subject the practitioner to damages for malpractice.

"As to the treatment, care and attention awarded to plaintiff after the wound had been cauterized, bandaged and placed in a splint and before the patient was removed to the hospital, the court is of the opinion that there was no evidence of lack of skill or attention which would justify submitting this phase of the case to the jury. It seems to me that if the plaintiff followed the proper or usual method of treating the injury in the first instance, then about all that could be done in caring for the injury thereafter and before the development of infection, if any, would be to apply the treatment first awarded and wait developments. Whether infection would develop or not was unknown and, as before stated, the preponderance of the medical evidence showed that it was the proper practice to award the treatment given by defendant, await results, and put off the time of cutting into the wound until such time as infection might appear, which would justify a resort to the knife. All of this the defendant seems to have done, and as I view the case there was no negligence on the part of defendant in so far as this phase of the case is concerned."

The first part of this opinion is based upon the facts disclosed by the record and correctly states the law, i. e., that there was reputable medical authority shown by the testimony of expert witnesses for the treatment given, and therefore respondent cannot be held negligent in following that authority. *Dahl v. Wagner,* 87 Wash. 492, 151 Pac. 1079; *Dishman v. Northern Pacific Beneficial Ass'n,* 96 Wash. 182, 164 Pac. 943.

We cannot agree with the trial court, however, that

there was no evidence of lack of attention. True, the patient was at his home in the country some miles from the doctor's office, but it is shown that he was nursed only by his wife, daughter, and the wife of a neighbor, none of whom were shown to have had any experience or training in nursing such cases, conditions which the doctor knew, or should have assumed, and notwithstanding the seriousness of the injury and the results which medical men look for and seek to avoid in such cases, there is no evidence of careful instructions or warning to the nurses which, as the jury might readily find, should have been given; and in the absence of such instructions, the infrequency of the doctor's visits, his failure to take the temperature of the patient, and the like, of which there was some evidence, were such as warranted the jury in finding that respondent could, if he had been more diligent in these respects, have detected the presence of infection and perhaps that the synovial sac had been penetrated, long before he did. Although the proper treatment was administered in the beginning, yet there may have been negligence in not giving proper instructions, or making frequent and sufficient examinations to determine the necessity of a change of treatment. *Swanson v. Hood,* 99 Wash. 506; 170 Pac. 135; *Reeves v. Wilson,* 105 Wash. 318, 177 Pac. 825; *Huber v. Hamley,* 122 Wash. 511, 210 Pac. 769.

This view would necessitate a reversal of the order appealed from, had there been proof from which the jury might reasonably infer that the final results were caused wholly or in part by such want of care; but we find no such proof in the record, and the order appealed from must be affirmed if the question was properly raised below.

Was the trial court justified in granting the motion for a new trial for lack of such evidence?

There was no motion to take from the jury the question of fact. Respondent relied upon his general motion for an instructed verdict, upon his requested instructions, and upon the inherent power of the trial court to grant a new trial. The motion for an instructed verdict was properly denied because the present state of the record is an admission that there was evidence to go to the jury as to the developments after appellant was taken to the hospital. The requested instruction was only to the effect that the defendant was not liable for the infection first appearing, and no issue was presented by the facts in which he might be held so liable. Clearly this does not reach the point we have been considering. Under this state of the record, had the trial court inherent power to award a new trial? The motion therefor was based upon the statutory grounds, including excessive damages, insufficiency of the evidence, and the like. Since the verdict was rendered upon the whole case and was indivisible, the trial court could not tell what part of the award, if any, was based upon the negligence we have been considering, and since there was no evidence that such negligence contributed to or caused the final condition, clearly the evidence upon that phase of the controversy was insufficient.

We think, under the rule announced in *Sylvester v. Olson,* 63 Wash. 285, 115 Pac. 175, and reaffirmed in *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486; *Funk v. Horrocks,* 99 Wash. 397, 169 Pac. 805; *Black v. Thompson,* 117 Wash. 156, 200 Pac. 1106; and *Austrem v. American Savings Bank & Trust Co.,* 122 Wash. 399, 210 Pac. 781, the order appealed from must be and it is affirmed.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.