[Civ. No. 2679. Third Appellate District.—May 19, 1924.]

## JOSEPH MARKART, Respondent, v. IRVING S. ZEIMER et al., Appellants.

[1] PHYSICIANS AND SURGEONS—MALPRACTICE—ISSUES—EVIDENCE—IN-STRUCTIONS.—In an action for damages for malpractice growing out of the employment of defendants by the plaintiff to perform a surgical operation, issues having been raised as to certain conditions in plaintiff's body after the performance of such operation, and there having been no evidence of such conditions or of their having resulted from defendants' working in performing the operation, it was error for the trial court to submit said issues to the jury in giving its instructions.

[2] ID.—PLEADING—REMOVAL OF ORGAN WITHOUT PLAINTIFF'S CON-SENT—ABSENCE OF CHARGE OF NEGLIGENCE—INSTRUCTIONS—ISSUES. In such action, where the complaint charged the defendants with a trespass in removing a certain organ without plaintiff's consent and against his expressed direction, and no charge was made that the work of removing it was carelessly or unskillfully done, it was error to submit to the jury the question of the degree of skill and care exercised by defendants in removing said organ, such a question being without the issues.

[3] ID.—PERFORMANCE OF OPERATION—DEGREE OF SKILL REQUIRED—INSTRUCTIONS.—In such action, an instruction that a "physician is responsible for an injury done to a patient through the want of proper skill and care of his assistant, if any," is incorrect in requiring of a surgeon "proper" skill and care in the performance of an operation. All that is required of him is that he have the degree of skill ordinarily possessed by reputable physicians or surgeons practicing in his locality.

[4] ID.—PLEADING—REMOVAL OF ORGAN WITHOUT PLAINTIFF'S CON-SENT—SUFFICIENCY OF COMPLAINT.—In such action, that part of plaintiff's complaint counting on the removal by defendants of a certain organ of plaintiff's without the latter's consent and against his expressed direction, states a cause of action.

[5] ID.—OPERATION FOR HERNIA—INCISION OF SPERMATIC CORD—NEG-LIGENCE—EVIDENCE.—In such action, where plaintiff's case is founded upon the claim that the operation was negligently per-

1. See 14 R. C. L. 784.
3. Degree of care and skill which a physician or surgeon must exercise, notes, 48 Am. Dec. 481; 59 Am. Dec. 397; 93 Am. St. Rep. 657; 1 Ann. Cas. 21; 37 L. R. A. 830; L. R. A. 1915C, 595. See, also, 21 R. C. L. 381.

formed in that defendants, in operating for the removal of a hernia, severed plaintiff's right spermatic artery or spermatic cord, the facts must establish such a condition as would warrant the jury in saying that as a matter of common knowledge the cutting of the cord complained of was an act of negligence, or it must be shown by expert testimony that this act resulted from the failure of the defendants to possess and use that degree of care and skill ordinarily possessed and used by physicians and surgeons in good standing practicing in the same locality.

[6] ID.—CUTTING OF SPERMATIC CORD—ADMISSIONS OF DEFENDANTS—EFFECT UPON QUESTION OF NEGLIGENCE.—In such action, the admissions of the defendants that in operating for the removal of a hernia they cut plaintiff's spermatic cord throw no light upon the proposition whether or not such a mischance is one of the hazards of an operation for hernia such as plaintiff's was, and whether or not, in the exercise of reasonable skill and care as such is ordinarily possessed and exercised by surgeons practicing their profession in the same locality, such a cutting or severance would ever occur.

[7] ID.—ADMISSION AS TO CHARACTER OF OPERATION—NATURE OF.—In such action, the admission by one of the defendants to the effect that the operation on plaintiff was a "wrong operation" or a "mis-operation" is not an admission that the operation was carelessly or negligently performed; it is at most an admission that he did not have sufficient skill to perform the operation properly; but it is not an admission that he did not have the degree of skill, care and learning possessed and used by other surgeons practicing their profession in his locality.

[8] ID.—ADMISSIONS—LIABILITY OF DEFENDANTS.—In such action, the statement of one of the defendants that the operation on plaintiff was a "mis-operation" and a "wrong operation" amounts to no more than an admission that the operation was not properly done, and that is not sufficient to render him liable.

[9] ID.—ADMISSION RENDERING DEFENDANTS LIABLE—WHAT IS REQUIRED.—An admission to be sufficient must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken.

[10] ID.—OPERATION MISTAKENLY PERFORMED—LIABILITY FOR.—In such an action, if the operation in question was so mistakenly performed as the result of a *bona fide* judgment by a qualified surgeon he will not be held liable for the unfortunate results of his mistake.

[11] ID.—ADMISSIONS—EVIDENCE.—In such action, while the admissions of defendants were competent as evidence of such facts as

---

6. Weight of admissions tending to show negligence, note, 14 **Ann. Cas.** 228. See, also, 10 **Cal. Jur.** 1081; 1 **R. C. L.** 473.

they admitted, they did not supply the absence of expert testimony in such particulars as expert testimony was otherwise required.

(1) 30 Cyc., p. 1590; 38 Cyc., p. 1618. (2) 30 Cyc., p. 1590; 38 Cyc., p. 1615. (3) 30 Cyc., p. 1572, sec. 1589. (4) 30 Cyc., p. 1583. (5) 30 Cyc., p. 1584 (Anno.), p. 1588 (Anno.). (6) 30 Cyc., p. 1588 (Anno.). (7) 30 Cyc., p. 1588 (Anno.). (8) 30 Cyc., p. 1588 (Anno.). (9) 30 Cyc., p. 1588 (Anno.). (10) 30 Cyc., p. 1578. (11) 22 C. J., p. 298, sec. 324; 30 Cyc., p. 1587 (Anno.), p. 1588 (Anno.).

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Reversed.

The facts are stated in the opinion of the court.

George F. McNoble, Charles V. Barfield and Hartley F. Peart for Appellants.

Sawyer & Sawyer for Respondent.

SHIELDS, J., *pro tem.*—This is an action for malpractice growing out of the employment of defendants by the plaintiff to perform a surgical operation on him for the cure or removal of a hernia in the region of the right groin.

The complaint was in two counts. The first count charges negligence in these particulars, "that the said defendants then and there so negligently, carelessly and unskillfully performed said operation in and upon plaintiff in this, that after they had made an incision, cut into and opened the body of plaintiff that they closed the inguinal canal through which the cord containing the blood vessels and nerves passed connecting the right testicle with the rest of the body so tight and close that it interfered with and stopped the circulation of the blood and the action of the nerves between the said right testicle and other portions of the body, and that they so further performed said operation in such a negligent, careless and unskillful manner that when the wound caused by said incision and operation commenced healing and did heal, the inner walls adhered and grew fast to the bowels of said plaintiff, and the said defendants further so negligently and carelessly handled and controlled the instrument with which they made said incision, and performed said operation, that an incision was

made in the right testicle of plaintiff with a sharp instrument, thereby seriously and dangerously wounding and injuring him.'' The second count exactly recharged these acts of negligence and in addition charged that at a later operation undertaken to relieve plaintiff, that the defendants without plaintiff's consent and against his expressed wish and will removed plaintiff's right testicle. The verdict of the jury was for the plaintiff and from the resulting judgment this appeal is taken. At the trial no evidence was offered tending in any substantial way to show that defendants in performing their surgical operation closed the inguinal canal so tightly that it interfered with the action of nerves or stopped the flow of blood to plaintiff's right testicle, nor was any such evidence offered or given showing that defendants so performed the operation that when the wound commenced healing ''the inner walls adhered and grew fast to the bowels of'' plaintiff.

[1] Yet these issues were definitely submitted to the jury by the court in giving its instructions. By instruction ''H'' the jury was told that ''if you find from all the evidence that the defendants or either of them, in operating upon the plaintiff for hernia . . . closed the inguinal canal in the plaintiff so tight and close that the natural circulation of blood or the natural action of the nerves were stopped or interfered with, between plaintiff's right testicle and the rest of his body,'' then that their verdict should be for the plaintiff. By instruction ''I'' the jury was told that if they found ''from all the evidence and as instructed, that the defendants or either of them in operating upon plaintiff for hernia'' from lack of skill and care did so in such a way that ''the inner walls of plaintiff's abdomen adhered and grew fast to the bowels of said plaintiff'' then that they must find for plaintiff. As stated there was no evidence of either of these conditions or of their having resulted from defendants' work in performing the operation. The submission of these issues to the jury without evidence to support them was error. [2] By instruction ''D'' the question of the degree of skill and care exercised by defendants in removing plaintiff's testicle was submitted to the jury. This was without the issues. The complaint charged the defendants with a trespass in removing the testicle without his consent and against his expressed direction. No

charge was made that the work of removing it was carelessly or unskillfully done. To submit this question to the jury was error.

[3] The instruction that a "physician is responsible for an injury done to a patient through the want of proper skill and care of his assistant, if any," is also incorrect in requiring of a surgeon "proper" skill and care in the performance of an operation. All that is required of him is that he have the degree of skill ordinarily possessed by reputable physicians or surgeons practicing in his locality. (*Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654].)

[4] The contention is made by appellants that the second count of the complaint states no cause of action for the removal of plaintiff's testicle without his consent.

We think that it does and that if this issue alone had been submitted to the jury a finding upon it in favor of plaintiff might have been sustained. But it was submitted in connection with other issues which should not have been submitted. As therefore it cannot be told upon which issue the verdict was based or as to what degree they both figure in the finding, the verdict cannot be permitted to stand. These errors will necessitate a retrial of the case.

Other questions presented by the record may be briefly discussed in so far as they may arise when the case is again tried.

The complaint charged, in addition to the matters about which no evidence was offered, that the defendants in performing the operation on plaintiff did so so negligently "that an incision was made in the right testicle of plaintiff with a sharp instrument, thereby seriously and dangerously wounding and injuring him." Little was made of this specific charge and the only evidence in relation to it was that plaintiff had felt it, and that one of the defendants had admitted the cutting.

The great bulk of plaintiff's testimony was that in performing the first operation, the defendants operated so unskillfully and negligently that they cut the spermatic cord or artery which nourished and which supplied circulation to plaintiff's right testicle, by reason of which it died and had to be removed. This does not appear to be within the issues. Plaintiff contends that the testicle and the cord or artery

which connects it with the body are but parts of one physical process and that under the charge that the testicle was wounded he could properly prove that the cord was cut. Any question on this point can so easily be removed by an amendment to the complaint that we need not further discuss it.

The evidence which plaintiff offered upon this point tended to show that plaintiff was afflicted with a hernia on the right side in the region of the groin; that it had existed for about two years; that it was not bothering him any at the time of the operation, and that it had never given him any trouble. After the operation plaintiff's right spermatic artery or spermatic cord was found to be severed, under conditions from which it might properly have been inferred that it had been cut by defendants, while performing the operation. [5] Plaintiff's case is founded upon the claim that the operation was negligently performed. This negligence must be made to appear from the evidence in the case. The facts must establish such a condition as would warrant the jury in saying that as a matter of common knowledge the cutting of the cord complained of was an act of negligence, or it must be shown by expert testimony that this act resulted from the failure of the defendants to possess and use that degree of care and skill ordinarily possessed and used by physicians and surgeons in good standing practicing in the same locality. (*Perkins* v. *Trueblood,* 180 Cal. 437 [181 Pac. 642] ; *Hesler* v. *California Hospital Co.,* 178 Cal. 764 [174 Pac. 654] ; *Houghton* v. *Dickson,* 29 Cal. App. 321 [155 Pac. 128] ; *Ewing* v. *Goode,* 78 Fed. 442; *Loudon* v. *Scott,* 58 Mont. 645 [12 A. L. R. 1487 and note, 194 Pac. 488].)

Expert evidence is almost universally required in such cases as this. (See cases above, also, *Carson* v. *Jackson,* 281 Fed. 411.) But none was offered at the trial. Plaintiff insists that the jury had a right to find without expert testimony that for a surgeon employed to operate upon what appeared to be a simple hernia, to cut the spermatic cord or artery was so palpably inexcusable as to disclose negligence in itself; that the injury was so unrelated to the operation and so outside of the thing the surgeons were employed to do, that, as a matter of common knowledge, the jury might find that the cutting was unskillful and negligent. Without cit-

ing these cases he invokes the principle announced in *Miles* v. *Hoffman,* 127 Wash. 653 [221 Pac. 316]; *Cornwell* v. *Sleicher,* 119 Wash. 573 [205 Pac. 1059]; *Hickerson* v. *Neely* (Ky.), 54 S. W. 842; *Evans* v. *Roberts,* 172 Iowa, 653 [154 N. W. 923]; *Benson* v. *Dean,* 232 N. Y. 52 [133 N. E. 125]; *Evans* v. *Munro* (R. I.), 83 Atl. 82.

As to whether or not this case comes within the rule of these cases, or as to whether or not the plaintiff's contention in this particular is sound, we make no decision, as on another trial the evidence may be different or the plaintiff may see fit to put the matter beyond question by producing expert evidence. It might be observed in passing that by his instructions plaintiff did not ask to have his case submitted to the jury on this theory.

Plaintiff's chief contention, however, is that the absence of expert testimony in this case is supplied by evidence of admissions of the defendant given at the trial. The testimony as to what these admissions were, can be briefly stated without omitting any of their substance. The plaintiff testified to a conversation had with defendant Dr. Heppner after the operation in which Dr. Heppner "said to me they had a little trouble by the operation, and injured the cord, but heal all right. If you lose a testicle, one testicle just as good as two." He said that he referred to the spermatic cord. Again the doctor said: "Yes, we had cut or injured the testicle; it heals, it will not hurt me further and will heal up." Continuing, the plaintiff testified that he did not ask them whether they had injured the cord or not. "No they said it freely they injured the cord." Question: "Both doctors said that they injured the cord? A. Yes." Again he repeated: "They just said, 'We had a little trouble and injured the cord.'" Asked who said that, he answered: "Dr. Heppner and Dr. Zeimer said, 'We injured the cord, that is we put the injured part back, injured the cord.'" There was other evidence in relation to the tying of the ends of the cord with catgut before returning them to the body and of some matters of detail and apparent aggravation, but not within the pleadings nor of consequence as admissions of lack of skill or care.

A Mrs. Wilkie, a friend of plaintiff, testified to a conversation she had with Dr. Heppner, after the operation. To her he said, "Mr. Markart was getting along fine; and fur-

67 Cal. App.—24

ther he said that it was a kind of a difficult operation, he said they had some trouble in dissecting, and they injured a cord, he said it would heal up, it would not be of any consequence.'' This statement was repeated to the witness. ''He said again that they injured the cord, and it would heal up.''

Another witness, Frank Philippi, testified as to a conversation he had had with Dr. Heppner in which he advised him not to be operated on by any Stockton doctor, and that then, in speaking of the operation on plaintiff, he said: ''We made a wrong operation on him.'' Dr. Heppner said that because of that operation Markart, the plaintiff, had lost his testicle. Continuing he said: ''He did not make any statements at all as to why it was removed he said it was a misoperation you know.''

Giving these statements as testified to by plaintiff and Mrs. Wilkie an implication and a meaning most favorable to the plaintiff, they constituted an admission by the defendants that in performing the operation for hernia, which they were employed to do, the defendants had cut and severed the spermatic cord or artery.

[6] But this adds nothing to plaintiff's case. He had already testified to that fact himself or given evidence from which it might be inferred. What we want to know is whether or not such a mischance is one of the hazards of an operation for hernia such as plaintiff's was, and whether or not, in the exercise of reasonable skill and care as such is ordinarily possessed and exercised by surgeons practicing their profession in the city of Stockton and vicinity, such a cutting or severance would ever occur. The admissions do not go this far.

[7] The admissions testified to by the witness Philippi were likewise insufficient. They related only to Dr. Heppner, and were to the effect that the operation on plaintiff was a ''wrong operation.'' Dr. Heppner ''said it was a mis-operation, you know.'' This is not an admission that the operation was carelessly or negligently performed. It is at most an admission that he did not have sufficient skill to perform the operation properly. But it clearly was not an admission that he did not have the degree of skill, care and learning possessed and used by other surgeons practicing their profession in his locality; and that was all the

skill and learning he was called upon to possess. On the contrary, Dr. Heppner impliedly contended that the "wrong operation" was up to the standard of physicians located in his neighborhood, for as part of the very admission testified to by Philippi he advised him "not to be operated on by any Stockton doctor," placing them all in a class with himself and Dr. Zeimer so far as surgical operations were concerned. [8] Dr. Heppner's statement that it was a "mis-operation" and a "wrong operation" amounts to no more than an admission that the operation was not properly done, and that is not sufficient to render him liable. (*Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654].) [9] An admission to be sufficient must be an admission of negligence or lack of the skill ordinarily required for the performance of the work undertaken. This "wrong operation" may have been deemed right at the time it was performed. [10] If it was so mistakenly performed as the result of a *bona fide* judgment by a qualified surgeon he will not be held liable for the unfortunate results of his mistake. (*Loudon* v. *Scott*, 58 Mont. 645 [12 A. L. R. 1487, and note 194 Pac. 488]; *Carson* v. *Jackson*, 281 Fed. 411; *Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654]; *Stalock* v. *Holm*, 100 Minn. 276 [9 L. R. A. (N. S.) 712, 111 N. W. 264]; *Dye* v. *Corbin*, 59 W. Va. 266 [53 S. E. 147]; *Wells* v. *Ferry-Baker Lumber Co.*, 57 Wash. 658 [29 L. R. A. (N. S.) 426, 107 Pac. 869]; *Coffey* v. *Tiffany*, 192 Mo. App. 455 [182 S. W. 495].) For example, an admission by a surgeon that the death of a patient was caused by an anesthetic which he had given him, and that he knew when he administered it that in the weakened condition of the patient it was dangerous to do so, was held insufficient to support a judgment against the physician in *Loudon* v. *Scott*, 58 Mont. 645 [194 Pac. 488]; see note to this case as reported in 12 A. L. R. 1487. These admissions, therefore, are not admissions that the operation complained of was not performed with reasonable care, or that the defendants did not possess and use that reasonable degree of learning and skill which was ordinarily possessed by the members of their profession in good standing practicing in their vicinity.

[11] As a consequence, while they were competent as evidence of such facts as they admitted, they did not supply

the absence of expert testimony in such particulars as expert testimony was otherwise required.

The judgment is reversed with directions to the lower court to permit the plaintiff to amend this complaint in the particulars herein referred to if he should so desire.

Finch, P. J., and Hart, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 17, 1924.

All the Justices concurred.