[Civ. No. 143. Fourth Appellate District.—May 19, 1930.]

FRED E. DONAHOO, Appellant, v. A. LOVAS, Respondent.

S. L. Heisinger, Jr., and M. G. Gallaher for Appellant.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Respondent.

BARNARD, Acting P. J.—This is an action against a physician for alleged negligence in diagnosis and treatment.

About the first of August, 1927, the plaintiff arose one morning with a very severe pain in his hip. Being away from home at the time, a physician who was called gave him a hypodermic injection to relieve the pain until he could return home. He returned home the next day and called another doctor, who treated him until August 14th. During this time he continued to have a sharp pain whenever he stepped on his left foot. On August 15th he went on crutches to defendant's office for treatment. He told the defendant that he had been taken care of by the other physician, but that "he hasn't done me no good." The defendant replied: "Well, if he hasn't done you any good with medicines, I don't think I will do you any good with medicines, so we will inject the nerve with alcohol." The plaintiff testified that upon being asked if this would be painful, the defendant replied that it would not, and also that the defendant said: "You're liable to walk right out of the

office and go to work." The defendant injected the alcohol into the sciatic nerve. The plaintiff testified that this operation was very painful and that he lost consciousness for a time; that prior to the injection his pain had been confined to a small area on the hip, but thereafter he suffered excruciating pain in his foot; that he went home and went to bed, and his foot remained "dead," but very, very painful; that he had no feeling when his foot was pricked with pins; that the defendant continued to give him treatment, particularly an opiate to relieve the suffering; that after treating him for about two weeks the defendant recommended that he go to California Hot Springs and see Dr. Corwin, the physician in charge. He was taken to the springs, where he remained about a week. On his return he told defendant that Dr. Corwin had told him that his circulation had been blocked and he could not do anything for him, and that the defendant replied: "He's right." In this connection plaintiff's wife testified as follows:

"A. Dr. Lovas wanted to know what success we had had, and what the doctor had done and said, and Mr. Donahoo told him that Dr. Corwin said that he should never have shot the alcohol in the sciatic nerve, that he had killed the nerve and blocked the circulation, and that was what was causing him pain.

"Q. And what, if anything, did Dr. Lovas reply to that?

"A. He says, 'He's right.' "

He also told the defendant that Dr. Corwin had advised him to have his teeth X-rayed and the bad ones taken out, although he stated that the teeth had nothing to do with the present condition of his foot, but that this procedure might assist his earlier recovery. The defendant continued to treat the plaintiff occasionally until December, 1927. Plaintiff testified he was not able to go to work until the following July, and that at the time of the trial, in April, 1929, while he was able to walk without crutches, he had not yet full use of his foot, and no control of his ankle.

There was evidence that while the defendant was still treating the plaintiff a consultation was held between the defendant and the first doctor who had treated plaintiff, at which both doctors agreed that the plaintiff should have his teeth X-rayed and any bad ones removed. Also, that some years prior to that, the plaintiff had had all of his upper front

teeth removed and was wearing a partial upper plate. The evidence showed that the plaintiff had previously been in good health, except that in the year 1922 he was afflicted with influenza and also neuritis in the shoulder. At the close of plaintiff's evidence the court granted a motion for a nonsuit and this appeal is from such order and judgment.

The main question here presented is whether or not there was sufficient evidence of negligence on the part of the respondent to justify the submission of the case to the jury. In *Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654, 655], the court said:

"The law on the subject of care and skill required of physicians in the treatment of patients is well settled. 'A physician and surgeon, by taking charge of a case, impliedly represents that he possesses, and the law places upon him the duty of possessing, that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where he practices, and which is ordinarily regarded by those conversant with the employment as necessary to qualify him to engage in the business of practicing medicine and surgery. Upon consenting to treat a patient, it becomes his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning to accomplish the purpose for which he was employed. He is under the further obligation to use his best judgment in exercising his skill and applying his knowledge.' (*Pike* v. *Honsinger*, 155 N. Y. 209 [63 Am. St. Rep. 655, 49 N. E. 762].) 'The difficulties and uncertainties in the practice of medicine and surgery are such that no practitioner can be required to guarantee results, and all the law demands is that he bring and apply to the case in hand that degree of skill, care, knowledge, and attention ordinarily possessed and exercised by practitioners of the medical profession under like circumstances.' (*Zoterell* v. *Repp*, 187 Mich. 330 [153 N. W. 695].) 'It is never enough to show that he had not treated his patient in that mode, nor used those measures, which in the opinion of others, even medical men, the case required; because such evidence tends to prove errors of judgment, for which the defendant is not responsible as much as the want of reasonable care and skill, for which he may be responsible.' (*Leighton* v. *Sargent*, 27 N. H. 474 [59 Am. Dec. 388].)''

■ Not only must negligence on the part of a physician be proved, but as a general rule, from the very nature of the case, expert evidence is required. (*Perkins* v. *Trueblood*, 180 Cal. 437 [181 Pac. 642]; *Haughton* v. *Dickson*, 29 Cal. App. 321 [155 Pac. 128]; *Scherer* v. *Eidenmuller*, 45 Cal. App. 372 [187 Pac. 445]; *Markart* v. *Zeimer*, 67 Cal. App. 363 [227 Pac. 683, 685].) No such evidence appears in the record here, except as hereinafter mentioned. An earnest effort is made by appellant to bring his case within this rule, or to establish it as an exception.

It is first contended that expert evidence is not necessary in all cases, and that the numbness and pain suffered by appellant were so clearly the result of the injection of the alcohol, that no expert evidence is needed to show negligence. Assuming, however, that such injection was the cause of the subsequent pain, this is not sufficient to establish that the physician was negligent in using that treatment. There is a restricted class of medical cases in which it has been held by the courts that the mere happening of the event raises a presumption of negligence. For instance, where a sponge or surgical instrument is left in the incision, it has been held that the burden was upon the doctor to clear himself. It has also been held in connection with certain X-ray cases, that where a dangerous instrumentality is in the possession of a party, the proper and skillful use of which would result in no injury, and where an injury follows the use of the same, negligence on the part of the person having charge thereof may be inferred. No such question is presented by the facts in this case, there being here involved only the question of diagnosis and treatment with a certain drug. Nothing in the nature of the facts herein takes this case out of the general rule.

■ It is next claimed that there was some expert evidence going to show the negligence of the defendant. In this respect reliance is placed upon the testimony of the physician who first gave the plaintiff a hypodermic injection, in order to assist him in reaching home, which testimony was as follows:

"A. Yes, sir. Now, from—basing my answer on the history of the case as given by Mr. Gallaher, it seems evident that the symptoms added to Mr. Donahoo's condition im-

mediately after the injection were due to the effect of the injection itself. I think that covers the point.''

It is apparent that this testimony goes no further than an opinion that the injection caused the suffering which immediately followed. It neither gives us light upon whether the injection caused the prolonged difficulty later suffered, nor as to whether or not that result, if it was a result, was to have been expected. It does not go to the question as to whether the respondent used the skill ordinarily practiced and used in that community. In this connection, it is further urged that the respondent made certain admissions showing that he was negligent, and that coming from a physician, such admissions constitute expert evidence. This will be treated in discussing the admissions claimed to have been made.

It is next urged that the admissions of the respondent were sufficient to fasten negligence upon him. It is first insisted that his admission that Dr. Corwin was right in asserting that the alcohol should never have been injected into the sciatic nerve is a confession of negligence. In support of this appellant relies upon the case of *Scott* v. *Sciaroni*, 66 Cal. App. 577 [226 Pac. 827]. In that case the physician admitted that the condition of the plaintiff was due to his negligence. We are unable to draw such an inference from the evidence in this case. In the case of *Markart* v. *Zeimer, supra,* the court says:

''An admission to be sufficient must be an admission of negligence or lack of the skill ordinarily required for the performance of the work undertaken. This 'wrong operation' may have been deemed right at the time it was performed.''

''If it was so mistakenly performed as the result of a *bona fide* judgment by a qualified surgeon he will not be held liable for the unfortunate results of his mistake.''

The admission in question went no further than an expression based on the results and is of no value in showing whether or not ordinary skill was used in the first place. It is also urged that respondent admitted he should not have used this treatment in the instant case when he testified that an injection of alcohol into the sciatic nerve ''is not done'' in mild cases of sciatica. The claim is made that he established this as a mild case, when he testified: ''Mild

sciaticas,—that is where people have it and are walking around and on the job, but still have pain in the sciatic nerve, but they can get around with it." There is evidence that at the time of going to respondent the appellant had been under the care of another physician for some two weeks, that respondent was told that the results were not satisfactory, and that quicker action was wanted. The evidence is uncontradicted that at the time the plaintiff was going about on crutches and was not on the job. Under such circumstances, this evidence cannot be held to be an admission that the plaintiff was suffering from a mild case of sciatica. Although respondent testified that he did not know of any doctors in his locality who employed that method of treating sciatica, there is no evidence that it was not so used, and such evidence as exists is to the effect that this was the usual and customary method of treating sciatica, except in mild cases. Whether or not this was such a mild case was peculiarly a question calling for expert evidence. The respondent himself testified that he regarded the case as a severe one.

 Appellant's claim of negligence is not that the injection was improperly performed, but that the treatment itself was improper, it being claimed that the respondent was negligent in making no diagnosis of the case, in giving wrong advice as to the effect of the treatment proposed, in making an injection of alcohol under the circumstances then existing, and in not first applying the methods of treatment, ordinarily used in mild cases. Without further proof than the result alone, those matters show no more than a mistaken judgment. More than this is required.

"Under the circumstances he should not be held liable for what was at most a mistake of judgment in weighing the probable consequence of the different methods that might be pursued. A physician is required to possess only ordinary skill in his profession and to use his best judgment in the exercise of that skill, and if he complies with these requirements, he is not liable for the nonsuccess of his treatments." (*Linn* v. *Piersol*, 37 Cal. App. 171 [173 Pac. 763, 764].)

The following language used by the Supreme Court, with slight changes, might well have been used in regard to the case before us:

"This action was brought on the theory of negligent diagnosis and care on the part of the defendant, resulting in loss of time, expense, and suffering on the part of the plaintiffs from March until June. The record presents a case of mistaken diagnosis by a reputable physician without the incidents of carelessness or unskillfulness necessary to constitute actionable negligence. There is an entire absence of evidence that the treatment prescribed on the original diagnosis was improper. A physician is not held to a higher degree of responsibility in making a diagnosis than in prescribing treatment. (See *Brewer* v. *Ring*, 177 N. C. 476 [99 S. E. 358, 364].) When due care, diligence, judgment, and skill are exercised a mere failure to diagnose correctly does not render a physician liable. (*Jaeger* v. *Stratton*, 170 Wis. 579 [176 N. W. 61].) A mistake in diagnosis in the present case was alleged and proved and is conceded to have taken place. But it was not only necessary for the plaintiffs to prove such mistake, but also that the mistake was due to failure to exercise ordinary care, diligence and skill in making the diagnosis. (*Schumacher* v. *Murray Hospital*, 58 Mont. 447 [193 Pac. 397, 403].) Mere proof that the diagnosis was wrong would not support a verdict. (*Patterson* v. *Marcus*, 203 Cal. 550 [265 Pac. 222, 223].)"

In *Markart* v. *Zeimer, supra*, the court says:

"Plaintiff's case is founded upon the claim that the operation was negligently performed. This negligence must be made to appear from the evidence in the case. The facts must establish such a condition as would warrant the jury in saying that as a matter of common knowledge the cutting of the cord complained of was an act of negligence, or it must be shown by expert testimony that this act resulted from the failure of the defendants to possess and use that degree of care and skill ordinarily possessed and used by physicians and surgeons in good standing practicing in the same locality."

Appellant argues that the principles laid down in *Markart* v. *Zeimer, supra*, do not apply to the case at bar for the reason that the former involved negligence in the performance of an operation, while the latter relates to the propriety of certain treatment. We see no such distinction. It would seem that whether or not a course of treatment was proper, under the existing circumstances, is as difficult

a question for the layman as whether an operation was properly performed, and equally calls for expert testimony. Assuming that plaintiff's later difficulties came from the treatment here complained of, there is no way by which a layman can tell from the evidence whether that was the usual and natural result, or a great exception. Regardless of the result, the evidence leaves us entirely in doubt as to whether the doctor used ordinary skill under the circumstances. All that was alleged in the complaint to have happened might well have happened, as far as any layman may be able to know, if the highest degree of skill and care was used in the treatment. Proof that the treatment did not turn out to be successful is not alone sufficient. It is entirely a question of whether or not respondent in applying the treatment in question used that reasonable degree of learning and skill that is ordinarily possessed and used by physicians in that locality. We find no evidence in the record to show that this was not done.

While, in passing upon a motion for a nonsuit, every reasonable inference must be drawn in favor of the plaintiff's evidence, the negligence of the defendant may not be presumed.

"Negligence on the part of a physician or surgeon is not presumed, but must be affirmatively proved. The same is true ordinarily with respect to the possession by the physician or surgeon of the requisite skill and learning. On the contrary, in the absence of evidence on the subject, it will be presumed that a physician or surgeon discharged his full duty to the patient, including the exercise of reasonable care and skill in his treatment." (48 C. J. 1142.)

Certain rulings on the admission of evidence are also questioned, but need not be considered, under the view we take of the main issue.

The judgment is affirmed.

Marks, J., and Owen, J., *pro tem.*, concurred.