[Civ. No. 6653. First Appellate District, Division Two.—April 18, 1929.]

ARTHUR JOHNSON, Respondent, v. AUSTIN' FISHER CLARKE, Appellant.

David C. Dutton and Dutton & Gilkey for Appellant.

P. O. Solon and Wm. H. Hollander for Respondent.

NOURSE, J.—Plaintiff sued for damages, alleging malpractice on the part of defendant in his capacity as a physician and surgeon. The cause was tried with a jury, which rendered a verdict for plaintiff in the sum of one thousand dollars. Plaintiff moved for a new trial on the issue of damages alone. His motion was granted and the defendant appeals. Defendant moved for a new trial generally. His motion was denied. He takes a separate appeal from the judgment which was entered upon the verdict. Both appeals are taken upon typewritten transcripts.

In August, 1921, plaintiff incurred an injury somewhere near the left kidney from which he suffered for nearly three years. He consulted the defendant in June, 1924. On July 22d of that year the defendant operated upon the plaintiff. At that time he found that the left kidney was "a dead or functionless pus kidney." He removed practically all the interior of this kidney and a large amount of matter and pus. He also found that the left ureter failed to drain this kidney, as it was completely blocked. The physical condition of the plaintiff was such on the operating table that the defendant was unable to make any further examination. He drained a large amount of pus from the kidney, inserted a rubber tube to provide further drainage and closed the incision. The patient recovered quickly. His physical condition continued to improve for several months and until March, 1925, when he consulted a urologist for an examination. This urologist found that the left ureter was permanently stopped up and that no urine was being discharged from the left kidney. He also found that the left kidney was dead and permanently functionless, but that there was an abscess in the lower portion of the ureter, and he advised the plaintiff to have the ureter removed. On April 14, 1925, defendant again operated on the plaintiff, this time removing about five inches of the left ureter. The plaintiff made a rapid recovery from this operation, gaining in weight and physical vigor. About two months thereafter he again suffered pain in the region of his left kidney, and another surgeon operated on him, removing the kidney capsule or shell.

The operation of April 14, 1925, is the basis of the action, the plaintiff claiming that defendant was negligent in removing the portion of the ureter and allowing a portion of the kidney to remain. To this charge of negligence the defendant makes answer that the ureter was the sole cause of plaintiff's ailment at the time, that he used all customary care and skill in the operation, that there was no negligence in not removing the kidney shell because it was functionless, and that plaintiff's subsequent ailments were due to his initial injury or to congenital deformities which could not have been anticipated at the time of the operation.

Upon the completion of plaintiff's case the defendant moved for a nonsuit on the grounds that there was no evi-

dence to show that he had done anything he should not have done or that he had failed to do anything he should have done, that there was no evidence that anything done or undone by him was the proximate or any cause of any injury or damage to plaintiff, and that no medical testimony was produced to prove any negligence on his part. This motion was denied. It should have been granted. Appellant has assigned a number of errors occurring during the trial, but as our examination of the evidence satisfies us that it is insufficient to support the judgment it is unnecessary to consider these points other than the one relating to certain hypothetical questions.

▆ "In an ordinary action for malpractice the physician or surgeon is not to be held as a warrantor of cures or of consequences other than those arising from a breach of his duty to skillfully perform the operation." (*Hall* v. *Steele*, 193 Cal. 602, 605 [226 Pac. 854, 855].) The degree of care or skill required of a physician or surgeon is that "ordinarily possessed and used by physicians and surgeons in good standing practicing in the same locality." (*Markart* v. *Zeimer*, 67 Cal. App. 363, 364 [227 Pac. 683], citing *Perkins* v. *Trueblood*, 180 Cal. 437 [181 Pac. 642], and other authorities.) With these principles in mind we will review the evidence in the light most favorable to respondent.

Testimony relating to the first operation performed by the appellant was offered for the purpose of showing his knowledge of the physical condition of the respondent, but no claim of negligence was predicated upon that operation because barred by the statute of limitations. The uncontradicted evidence discloses that at the time of the first operation the appellant found that the respondent had a dead or functionless pus kidney, in which there was no substance other than matter and pus, which he removed, but that he did not remove the kidney capsule or shell; that in ninety-nine per cent of cases of that character, where the pus is drained out of a kidney capsule, the capsule closes up and depletes; that, at the time of that operation, the appellant discovered that the left ureter was blocked and that there was no drainage through it from the diseased kidney, but, because of the low physical condition of the patient, he was unable to operate on the ureter at that time. Prior to the second operation, which is the basis of the complaint, respondent

visited Dr. Meads, a specialist in urology, for purposes of examination. After a thorough examination this doctor reported to appellant that the respondent's left kidney was functionless and dead, that there was pus coming from the left ureter, but not from the kidney, that there was an abscess in the lower portion of the left ureter, and that this ureter should be removed. The testimony of the appellant, who was called for the respondent under section 2055 of the Code of Civil Procedure, and the testimony of Dr. Meads, who was also called by respondent, tended unmistakably to prove that the operation complained of was performed with all due care and skill, and that they both believed at the time that the left kidney was dead and functionless, that, because of this fact, there could be no drainage from the kidney to the ureter, and that the removal of the latter was the proper and scientific method of treatment under the circumstances. This testimony was corroborated to some extent by Dr. Taylor, who was also called by respondent, and who testified that the two operations performed by appellant had greatly benefited the respondent.

The only other witness who testified upon any material circumstance on the issue of negligence in respondent's case was Dr. Beard. This witness, in answer to a hypothetical question which assumed that respondent's left ureter was open at the time of the second operation, and that the pus was draining from the left kidney to the bladder through this ureter, testified that it was bad medical practice to remove the ureter at that time. Appellant vigorously protested the propounding of this question to the witness upon the ground that it assumed facts not in evidence —the condition of the ureter at the time of the operation His objection was overruled upon the assurance of respondent's counsel that they would establish those facts. This was not done and appellant's motion to strike the answer should have been granted. On cross-examination the same witness testified that if the fact was that, at the time of the operation and prior thereto, this ureter was totally sealed and blocked up it was good surgery to remove the portion of it as was done by the appellant. That such was the fact was proved by undisputed evidence which was that on the 9th of March, 1925, and at the time of the second operation in April following, this ureter was completely blocked up,

that there was no kidney tissue in the left kidney, that there was no drainage from this kidney through the ureter, and that the stoppage of the ureter and the lack of function of the left kidney were both permanent. Other physicians called by the appellant were asked similar hypothetical questions upon cross-examination by the respondent. Their answers were to the same effect that if the ureter were open and draining it would be bad medical practice to remove it as was done by the appellant, the answers which would seem obvious to laymen as well. Two of these witnesses testified on cross-examination that before a surgeon should remove the ureter he should ascertain the condition of the kidney and that it would be bad medical practice to remove the ureter without having done so. There was, however, no testimony that the appellant in this case did not employ the requisite care and skill in ascertaining this condition before he performed the second operation. His testimony was that he removed the cells of the kidney in the first operation and the medical testimony is all in accord that if this is done the ureter could be safely removed without fear of trouble from the kidney. Before appellant performed the operation complained of the respondent of his own accord consulted an expert urologist who was known as a specialist in that branch of medical practice. After a thorough examination of the patient this physician reported that the left kidney was dead and functionless; that the ureter was not draining from the kidney; that it was permanently functionless and he recommended its removal. If reputable surgeons are to be charged with malpractice and required to respond in damages for performing operations under circumstances of this character, then the law requires of them the exercise of more than ordinary professional care and skill and makes them guarantors of the consequences of any operation which they may be called upon to perform in the course of the practice of their profession. To so hold would be an invitation to irresponsible quackery with its false promises of sure cures, and it would impose an unreasonable demand upon the reputable members of a most useful profession.

A hypothetical question should be based upon facts which are in evidence (*Snow* v. *Harris,* 41 Cal. App. 34, 37 [181 Pac. 676]). It may assume any facts within the limits of the evidence, but must not be unfair or misleading

(*Treadwell.* v. *Nickel,* 194 Cal. 243, 264 [228 Pac. 25]). Where the question assumes facts directly in conflict with the undisputed facts in the case it is wholly valueless as a hypothetical question, and an answer based upon such false assumption wholly fails to meet the demands of competent evidence. (*Estate of Gould,* 188 Cal. 353, 356 [205 Pac. 457].) ▇ In a case such as this, where the matter in issue is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive. (*Wm. Simpson Con. Co.* v. *Industrial Acc. Com.,* 74 Cal. App. 239, 243 [240 Pac. 58].)

▇ Here the only competent evidence was that the left kidney was dead and functionless, that the ureter was permanently closed and had ceased functioning as a drain for the kidney, and that, because of these conditions, the operation performed by the appellant was in accord with good medical practice, and had no possible relation to the unfortunate condition which afterward arose in respondent, a condition which could not reasonably have been foreseen by appellant at the time of the operation.

Under these circumstances the prejudice of these hypothetical questions which assumed facts directly contrary to the facts in evidence, is apparent and this error would require a reversal of the judgment. Such course must necessarily carry with it an order reversing the limited order granting plaintiff a new trial on the issue of damages alone.

Judgment and order reversed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 17, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 17, 1929.

All the Justices present concurred.