[Civ. No. 7458. First Appellate District, Division Two.—April 13, 1931.]

M. J. NICHOLAS, Appellant, v. P. N. JACOBSON, Respondent.

Philip M. Carey and Marvin B. Sherwin for Appellant.

Dutton & Gilkey for Respondent.

NOURSE, P. J.—Plaintiff sued for damages for alleged malpractice. At the close of plaintiff's case the trial court granted defendant's motion for nonsuit. The plaintiff has appealed on a bill of exceptions.

This is the third trial of this cause. The first resulted in a verdict for plaintiff which was reversed by the Supreme Court on the grounds of insufficient evidence. (*Nicholas* v. *Jacobson*, 205 Cal. 577 [271 Pac. 1057].) The second trial terminated through the disagreement of the jury.

Plaintiff consulted Dr. L. P. Gilbert for medical attention to a condition resulting from varicose veins. He had previously been operated on by Dr. Ottinger for the same condition, but insisted that the operation had been unskilfully performed and had demanded money damages from Dr. Vecki, under whose direction the Ottinger operation had been performed. Dr. Gilbert took plaintiff to Dr. Jacobson, the defendant, who examined plaintiff and advised an operation. Some few months later plaintiff returned to defendant, submitted to a further examination, and on March 26, 1923, the defendant performed the operation whereby varicose veins were removed from the left scrotum. After the plaintiff returned to his home the wound became infected and the defendant called at his home on numerous occasions to treat that condition. Several months later the plaintiff discovered that his left testicle was gone. On the first trial of the case plaintiff contended that the defendant had removed this testicle, but, failing in his proof of that charge, he was permitted, over the objection of the defendant, to amend his complaint and substitute the charge that the same had been injured and destroyed as a result of the operation.

The evidence educed at the third trial was practically the same (with two exceptions to be noted hereafter) as the evidence on the first trial which the Supreme Court held insufficient to sustain the verdict. Thus there is no competent evidence in this record to show that the loss of the testicle was the result of the operation performed by the

defendant. The uncontradicted evidence is that when the defendant opened the sac in the presence of two other reputable physicians he found "that the spermatic artery with the 'vas deferens' was severed and buried with scar tissue. . . . The ends of the cords were disjoined." The opinion was there expressed in the presence of these two physicians that atrophy of the testicle would certainly result from that condition, and this opinion was approved as sound by all the medical experts called by the plaintiff. The undisputed evidence is that plaintiff had been suffering from this varicose condition for many years before he called on Dr. Vecki; that the latter advised an operation in January, 1921, but that plaintiff did not submit to an operation until October, 1922; that the left testicle was then enlarged and softened and had begun to degenerate; that the probable result of this condition was atrophy, which might continue until the whole testicle entirely disappeared; and that immediately prior to March 26, 1923, when defendant operated on plaintiff, the latter complained of the same physical conditions which he had reported to Dr. Vecki and which the latter found present when he performed the operation of October, 1922. We find undisputed evidence that the defendant possessed the degree of skill and learning ordinarily possessed and exercised by physicians and surgeons practicing in the same locality, and no evidence tending to show that in this instance he did not exercise that skill and learning, unless it be found in an inference to be drawn from the alleged result of the operation.

This brings us to the oft-disputed question of application of the *res ipsa loquitur* doctrine in cases of alleged professional malpractice. In *Brown* v. *Shortlidge,* 98 Cal. App. 352, 357 [277 Pac. 134, 136], the court reviews a number of cases dealing with this question and approves the application of the doctrine when the result of the professional treatment is of such a character that medical testimony is not necessary to prove it. As illustrative of such a case the court said: "If a patient should visit a surgeon for the purpose of having a mole removed from the right foot and awoke from an anesthetic minus his left arm it is certain that some satisfactory explanation would be required to stop the fact itself from broadly proclaiming the negligence of the surgeon." The illustration is followed by a .

statement which draws a clear distinction between the character of cases where the doctrine is sought to be applied; the cases where the question of negligence depends upon the merits of a diagnosis and scientific treatment, and, the cases where some ulterior act or omission occurs, the judgment of which does not require scientific opinion to throw light upon the subject.

The principle seems clear. ■ The *res ipsa loquitur* doctrine rests upon the *inference* of negligence drawn from the *fact* that the injury was not one which would ordinarily have happened if those having the management used proper care. But an inference is a deduction which the *reason* of the jury makes from the *facts proved*. (Code Civ. Proc., sec. 1958.) ■ Hence, when the facts can be proved by competent evidence, independent of scientific or expert opinion, the reason of the jury would permit an inference of negligence drawn from the proved facts. But when proof of those facts depends wholly upon scientific or expert opinion, and all the testimony offered for that purpose demonstrates that there was nothing more than an error of judgment, and fails to show a want of ordinary care, diligence and skill, there are no proved facts upon which an inference of negligence may be founded. ■ Mere proof that a diagnosis was wrong or that a treatment was unsuccessful will not support a verdict. (*Patterson* v. *Marcus*, 203 Cal. 550, 552 [265 Pac. 222]; *Hall* v. *Steele*, 193 Cal. 602, 605 [226 Pac. 854]; *Markart* v. *Zeimer*, 67 Cal. App. 363, 364 [227 Pac. 683]; *Johnson* v. *Clarke*, 98 Cal. App. 358, 361 [276 Pac. 1052].)

■ The true rule, as we understand it, is this: Ordinarily, negligence on the part of a physician or surgeon must be proved by expert evidence (*Perkins* v. *Trueblood*, 180 Cal. 437, 443 [181 Pac. 642]; *Patterson* v. *Marcus*, 203 Cal. 550, 553 [265 Pac. 222]; *Houghton* v. *Dickson*, 29 Cal. App. 321, 325 [155 Pac. 128]), and when the matter in issue is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive. (*Wm. Simpson C. Co.* v. *Industrial Acc. Com.*, 74 Cal. App. 239, 243 [240 Pac. 58]; *Johnson* v. *Clarke*, 98 Cal. App. 358, 364 [276 Pac. 1052].) ■ Hence, when the expert evidence fails to show negligence on the part of the physician or surgeon, and there is no evi-

dence of an independent act or omission within the common knowledge of laymen, there is no ground upon which the jury may base an inference of negligence, and in such a case a nonsuit is proper. (*Patterson* v. *Marcus, supra; Johnson* v. *Clarke, supra; Donahoo* v. *Lovas,* 105 Cal. App. 705 [288 Pac. 698].)

We have said that the evidence educed at the third trial was the same as that reviewed by the Supreme Court and heard at the first trial, with two exceptions. Aside from this new evidence the parties are bound by the decision of the Supreme Court as the law of the case. That court having held that the evidence was insufficient to support the verdict, the judgment here appealed from must be affirmed unless we find in the new evidence something which would require the case to go to the jury. In this connection the appellant urges that he has a new case because of the evidence tending to show that he was really not suffering from any ailment and did not require an operation. The point is presented and argued by counsel in all seriousness and apparent good faith, but it is difficult for us to approach the subject with the judicial attitude which the good faith of counsel always demands, because it is manifest to us, as it must have been manifest to the trial judge, that counsel have been deceived by their client in this respect. If appellant was not in need of medical treatment it is difficult to understand why he had visited Dr. Gilbert and asked for such treatment; why he had accepted from Dr. Gilbert a certificate for presentation to his employer certifying that he had "an extensive varicocele which needs surgical treatment"; why he had gone with Dr. Gilbert to the respondent and had permitted Dr. Gilbert to advise the operation without objection; why, at the same time, he had made a written demand upon Dr. Vecki for money damages based upon the claim that Dr. Vecki had failed to cure him in the operation which he had performed some six months prior, and why, when he called upon Dr. Gilbert and Dr. Jacobson, he was accompanied by an attorney at law.

We are fully cognizant of the rule applicable to motions for nonsuit—that the evidence must be viewed with reasonable favor in support of plaintiff's case and taken most strongly against the defendant. (9 Cal. Jur., p. 554.) But this does not require us to accept as true everything

which is in the testimony of the witnesses. Words may be mere words in the testimony, but evidence "is the means, sanctioned by law, of ascertaining in a judicial proceeding the truth respecting a question of fact". (Code Civ. Proc., sec. 1823.) One of the "means sanctioned by law" is to have the witness appear and give his testimony orally, but it has frequently been held that a court is not bound to accept oral testimony as evidence of a fact if such testimony is inherently improbable. (*Davis* v. *Judson,* 159 Cal. 121, 130 [113 Pac. 147]; *Caldwell* v. *Weiner,* 203 Cal. 543, 546 [264 Pac. 1100]; *Staples* v. *Hawthorne,* 208 Cal. 578, 583 [283 Pac. 67].) Such is the case here. █ It is not the habit of normal men to submit to medical or surgical treatment unless they have some physical ailment, or, at least, unless they think they have such ailment. Hence, the mere statement of the appellant made seven years after the occurrence that he did not have any physical ailment when he consulted the respondent and that he did not ask the respondent for medical treatment must be rejected as evidence by the common sense of mankind. But we do not mean to hold that the trial judge may pass on the credibility of a witness in ruling on a motion for nonsuit. We merely hold that this particular testimony is so inherently improbable that it was not entitled to consideration as evidence in the case, and that, if a verdict for the plaintiff should have been founded on it such verdict would have had no support as being against the law. (*Estate of Luckenbach,* 205 Cal. 292, 301 [270 Pac. 961, 965], where the court took the following quotation from *Estate of Bryson,* 191 Cal. 521, 541 [217 Pac. 525], adding the emphasis noted: "To justify the submission of any question of fact to a court or jury there must be proof of a *substantial* character that the fact is as alleged.")

█ In this same connection it is now argued for the first time that appellant was not in need of a surgical operation but might have been given some other treatment less severe. The expert evidence is all one way—that this is wholly a matter of judgment and that medical men could not now say that the operation was not in accord with sound medical judgment and skill.

█ The second exception in which it is argued that the case differs from the first appeal relates to the issue of

probable cause. In the former appeal the Supreme Court held that there was no evidence that the deterioration of appellant's organ was either due to said operation or to any unskilfulness on the part of the respondent. To supply this evidence the appellant called Dr. Beard in the third trial. This witness testified that upon his examination of the appellant in June, 1929 (some six years after the operation) he was unable to find that appellant had a left testicle, but did find something about the size of a raisin which may have been an atrophied testicle; that the disappearance of the testicle might have resulted from the operation performed by the respondent, from the varicocele condition of the veins, or from the operation performed by Dr. Vecki. We can find in this evidence nothing to supply the deficiency in the evidence pointed out in the former opinion. The loss of the organ might have been attributed to any one of the causes mentioned in the testimony with equal probability and if the jury had been asked to determine the cause upon that testimony it might just as well have tossed a coin for its verdict.

Finally it is argued that the evidence was conflicting and that the case, for that reason, should have gone to the jury. Numerous instances of conflicts are cited, many of which are contradictions by themselves of the witnesses called by appellant. If mere conflict of evidence were sufficient to send every case to the jury there would be no meaning to the provisions of section 581 of the Code of Civil Procedure, which empower the court to grant a nonsuit "when upon the trial the plaintiff fails to prove a sufficient case for the jury". There is no uncertainty in the rule of the decisions that a nonsuit is proper when the evidence is legally insufficient to support a verdict for the plaintiff. (9 Cal. Jur., pp. 558, 559; *Estate of Luckenbach,* 205 Cal. 292, 301 [270 Pac. 961]; *McKenzie* v. *Ray,* 168 Cal. 618, 623 [143 Pac. 1018].) Mere conflict in the evidence upon immaterial matters has never been held sufficient to send a case to the jury if the evidence, taken in the light most favorable to plaintiff, would not support a verdict for him.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.